

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                          PLAINTIFF

vs.                      CASE NO. 4:99CR87GH
                              4:04CV2252GH

CHRISTOPHER SEAN DEATON                                         DEFENDANT

### ORDER

Christopher Sean Deaton ("Deaton") was found guilty of possessing child pornography on November 2, 2001.[1] Deaton was sentenced on April 23, 2002, to 57 months imprisonment, followed by three years of supervised release. Deaton filed his notice of appeal on May 2, 2002. In his appeal, Deaton asserted that (1) the Court erred in failing to consider the applicability of the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) to his conviction; (2) the Court erred in applying an enhancement pursuant to U.S.S.G. § 2G2.2(b)(1); and (3) the Court erred in denying Deaton's motion to suppress his statement that was given to agents during the execution of the search warrant. On May 9, 2003, the Eighth Circuit Court of Appeals affirmed his conviction. *United States v. Deaton*, 328 F. 3d 454 (8th Cir. 2003).

Deaton has filed a motion to vacate, set aside or correct his sentence pursuant

---

[1]Deaton's first trial commenced on January 12, 2000. On January 14, 2000, the Court declared a mistrial after the jury announced that it was unable to reach a unanimous verdict. Deaton was retried on June 12, 2001 and on June 13, 2001, the Court again declared a mistrial after the jury announced that it was unable to reach a unanimous verdict. Deaton was tried a third time, commencing October 29, 2001. On November 2, the jury found defendant guilty of possession of child pornography.

to 28 U.S.C. § 2255.[2] In his motion he contends that: (1) his conviction was obtained by perjury of Special Agent Hill before the Grand Jury; (2) his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (3) the scope of the investigation overreached constitutional boundaries once agents obtained a confession from J.D. Gerrald; (4) the government's expert witness used perjured testimony contrary to prior testimony; (5) the former prosecutor improperly prosecuted Deaton because she was unlicensed to practice law; (6) the government failed to turn over pertinent discovery relating to surveillance notes; (7) trial counsel was ineffective; (8) appellate counsel was ineffective; and (9) Deaton was sentenced in violation of *Booker*.

1. <u>Conviction Obtained by Perjured Testimony and the Search and Seizure was Unconstitutional</u>

In these first two claims, Deaton contends that FBI Special Agent Jill Hill perjured herself before the Magistrate Judge by stating in her affidavit in support of an application for search warrant that she could not locate Elaine Moore, despite exhausting all means to do so. According to Deaton, this alleged perjury led to the search which resulted in his subsequent indictment.

The government contends that the claim is procedurally defaulted. Deaton denies this. The Court need not address "the potential procedural-bar morass" and will "address the much simpler issue of the merits of [Deaton's] claim. *Stephens v. Norris*, 83 F. 3d 223, 224 (8th Cir. 1996).

The FBI in Little Rock received a referral from the FBI in Baltimore concerning several complaints about an "Elaine Moore" on the Internet. According to the complaint, Moore was engaging in discussions through ICQ (a software

---

[2]On December 7, 2004, the Court granted Deaton's motion to reinstate his § 2255 motion for extension of time to file the petition. Deaton filed his § 2255 motion on December 7, 2004.

-2-

available on the Internet to allow an individual to chat with others with similar interest) stating that she was a working prostitute and that her granddaughters were participants in the business. Moore transmitted sexually explicit images of her three granddaughters. Moore's Internet Service Provider ("ISP") was traced to Schwegman's Office City ("Schwegman's") in Batesville, Arkansas. Schwegman's rents server space from Worldlynx in Little Rock, Arkansas. This account was opened in the name of Terry Barnett by Christopher Deaton on January 27, 1998. The title of the account was "Tbarnett." The billing address for the account was Barnett's Phillipps 66 Station. The account's service fees were paid by direct debit on a checking account with Citizens Bank in the name of Terry Barnett.

On November 18, 1988, the Tbarnett account was suspended from use on the internet. On that same date Deaton called Schwegman's and asked for assistance with his account. Worldlynx returned his call and Deaton gave Tbarnett as the account with which he was having problems and the three telephone lines which were used to access the internet. The telephone numbers were to Barnett's Phillips 66 gas station, Deaton's automotive garage, and John R. Frederick's trailer, which was located on the same property as Deaton's garage.

Also on November 18, 1988, while the account was suspended, Hill and Special Agent Spurgers were waiting at Schwegman's to see if anyone would come into the Store to determine what was wrong his/her account. A woman by the name of Pam Lindsey opened an account with the logon name of "precious." The application for the account had the same address as that of Elaine Moore's application. The address, 202 Oakhill Loop, was found to be a bad address.

Hill filed an application and affidavit setting forth the facts concerning the Tbarnett account but made no mention of Lindsey. Deaton contends that Hill intentionally omitted the information regarding Lindsey and lied to the Magistrate

Judge about not having a good address for Lindsey.

Deaton's contentions are without merit. "The Fourth Amendment requires a showing of probable cause to support a search warrant. Whether probable cause exists depends upon the totality of the circumstances, but it requires a showing of facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched. *United States v. Gabrio*, 295 F. 3d 880, 882-883 (8th Cir. 2002) (citations and quotations omitted).

There was no requirement that Hill include any allegations about Lindsey in order to obtain the search warrant for Deaton. The facts, as alleged by Hill, were sufficient to establish probable cause for the search warrant. That is, child pornography had been sent on at least 5 different occasions to computers using the Tbarnett account, which had been set up by Deaton. Deaton had identified the three telephone numbers which had been using the Tbarnett account and the physical location of each of those telephone numbers was searched. There was certainly probable cause to establish that computers containing child pornography would be found at the addresses searched.

Furthermore, there is no support for Deaton's assertion that Hill intentionally misrepresented the facts to either the Magistrate Judge or the grand jury. The facts contained in the affidavit were truthful. The Court cannot find that any statements were deliberate falsehoods or that Hill made any statements with reckless disregard for the truth.

Thus, the Court cannot find that the search of Deaton's business was unconstitutional and the first two claims are dismissed.

2. Scope of Investigation was Unconstitutional

Deaton contends that once the law enforcement officers learned based on J.D. Gerald's confessions that Gerald was Elaine Moore, the search of Deaton's property

should have ceased because there was no particularized suspicion for the search. The search, according to Deaton, was for "Elaine" and once "Elaine" was found, probable cause for the search against Deaton no longer existed. Deaton further asserts that the warrant lacked particularity.

The first contention is without merit. That Gerrald confessed to being Moore did not limit law enforcement officers in continuing with their investigation. As discussed above, there was evidence to support investigating Deaton about alleged possession of child pornography. Furthermore, Deaton had admitted to downloading child pornography onto his computer.

With regard to the particularity argument, the items sought to be seized were those which contained visual depictions and images of minors engaged in sexually explicit conduct or items depicting the sexual exploitation of minors. The warrant specifically identified objects which are prohibited by 18 U.S.C. § 2252. *See United States v. Gleich*, 397 F. 3d 608, 611-12 (8th Cir. 2005) (warrants satisfied particularity requirement because language contained in warrants limited search to items prohibited by statute). *Compare United States v. Riccardi*, 405 F. 3d 852, 862-64 (10th Cir. 2005)(warrant to seize and examine defendant's computer which was not limited to any particular file or any particular federal crime rather than limited to search related to child pornography failed to satisfy particularity requirement but good faith exception to exclusionary rule applied)

3. Use of Perjured Testimony by Government Agent

Deaton contends that the government's expert, FBI Special Agent Trey Whatley, perjured himself by testifying in the third trial that he had found child pornography on Deaton's computer when he had previously testified that he had not found any child pornography.

This issue came up in the third trial when Deaton's attorney attempted to

-5-

impeach Whatley with this seemingly inconsistent testimony. Whatley explained that additional investigation was conducted after the first trial, resulting in the discovery of additional evidence against Deaton.

Deaton cannot establish that Whatley committed perjury. At the most, the agents were able to obtain additional information which was used at the third trial. This does not constitute perjury.

4. Improper Prosecution

Deaton contends that he was improperly prosecuted because the former Assistant U.S. Attorney Lesa Jackson did not have a license to practice law at the time the evidence was present before the grand jury and during the first two trials. Deaton further argues that the subsequent Assistant U. S. Attorney, Todd Newton, engaged in misconduct in failing to disclose Jackson's status when it became known.

Deaton cites 28 U.S.C. § 530B, known as the McDade Amendment, which provides that an attorney for the government shall be subject to state laws and rules, and local federal court rules, governing attorneys in the states where the attorney practices, to the same extent and in the same manner as other attorneys in that state.

Deaton is not entitled to relief on this ground. The Arkansas courts have found that prosecutors who did not have actual authority to prosecute a defendant were acting as a "de facto official" and the defendant could not collaterally attack the prosecutor's lack of authority to prosecute. *See Bell v. State,* 334 Ark. 285, 299 (1998) (assistant attorney general appointed as special deputy prosecutor who did not meet residency requirement was de facto official); *State v. Roberts,* 255 Ark. 183 (1973)., (deputy prosecutor not reappointed was de facto official); *Chronister v. State,* 55 Ark. App. 93 (1996) (city attorney who did not have authority to prosecute state misdemeanor prosecution was de facto official) The court in *Chronister*, relying on

*Faucette, Mayor v. Gerlach*, 132 Ark. 58 (1918) stated that :

> [a] de facto official is one who by some color of right is in possession of an office, and performs its duties with public acquiescence, though having no right in fact; the acts of de facto officials may not be questioned based upon of the lack of legal authority except by some direct proceeding instituted for the purpose by the State or by someone claiming the office de jure, or when the person himself attempts to build up some right, or claim some privilege by reason of being the official he claims to be; in all other cases, the acts of an officer de facto are as valid and effectual while he retains the office as if he were an officer by right, and the same legal consequences will flow from them for the protection of the public and third parties.

55 Ark. App. at 95.

In *Roberts,* the Arkansas Supreme Court stated the policy behind validation of the acts of de facto officials:

> But for the sake of order and regularity, and to prevent confusion in the conduct of public business and insecurity of private rights, the acts of officers de facto are not suffered to be questioned because of the want of legal authority except by some direct proceeding instituted for the purpose by the State or by some one claiming the office de jure, or except when the person himself attempts to build up some right, or claim some privilege or emolument, by reason of being the officer which he claims to be. In all other cases the acts of an officer de facto are as valid and effectual, while he is suffered to retain the office, as though he were an officer by right, and the same legal consequences will flow from them for the protection of the public and of third parties. This is an important principle, which finds concise expression in the legal maxim that the acts of officers de facto can not be questioned collaterally.'

*Roberts*, 255 Ark. at 185-86(citation omitted)

Here, Jackson acted as a de facto official during her employment with the United States Attorney's Office. She was appointed by the Attorney General of the United States and vested with the power to investigate and prosecute criminal cases within the Eastern District of Arkansas. 28 U.S.C. § 542(a) ("The Attorney General may appoint one or more assistant United States attorneys in any district when the public interest so requires."); 28 U.S.C. § 547 (US attorney shall prosecute for all

offenses against the United States). Jackson operated under color of authority by virtue of her appointment and that she did not have a valid license at the time does not invalidate any of her actions.

Furthermore, Deaton cannot establish any prejudice resulting from Jackson's actions. There is no evidence that Jackson introduced false evidence before the grand jury, exerted undue influence on the grand jury, or did anything else in violation of the law. Jackson was acting on behalf of the U.S. Attorney who was licensed to practice law and authorized the indictment to be presented to the grand jury. *See United States v. Tulk*, 171 F. 3d 596, 598 (8th Cir. 1999) (any possible prosecutorial misconduct before grand jury cured by subsequent finding of guilt).

Thus, the Court finds that Deaton's claims of improper prosecution and prosecutorial misconduct should be denied.

5. Failure to Provide Discovery

Deaton contends that the government failed to turn over notes regarding surveillance of John Frederick, Terry Barnett's station, and notes concerning when Elaine was on-line. He contends that these notes would have been used for impeachment with regard to surveillance of locations, Hill's testimony, and would be used to support Deaton's claim that Hill knew that he was not Elaine Moore.

To establish a violation of *Brady*, Deaton must establish that: 1) that the government suppressed evidence; 2) that the evidence was exculpatory; and 3) that the evidence was material either to guilt or punishment. *United States v. Dittrich*, 204 F.3d 819, 822 (8th Cir. 2000). "Evidence is considered 'material' for purposes of the Brady rule where a 'reasonable probability' exists that, 'had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Lingle v. Iowa*, 195 F. 3d 1023, 1026 (8th Cir. 1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985))

-8-

Here, Deaton cannot establish that even if the government failed to turn over the evidence, that it would have been exculpatory. *See United States v. Dierling*, 131 F.3d 722, 736 (8th Cir. 1997)("Mere speculation that the government had exculpatory evidence is an insufficient basis for a *Brady* claim.")

Thus, the Court finds there is no merit to this claim.

6. Ineffective Assistance of Trial Counsel

Deaton claims that his trial counsel was ineffective for failing to obtain a ruling from the Court concerning the admissibility of a tape recording between Deaton and the Internet Service Provider and failing to raise the issue during cross examination, failing to raise the issues previously discussed regarding the search warrant and scope of the search in a suppression motion, and failing to adequately impeach the government witnesses with their prior testimony.

With regard to the tape recording, Hill testified that after the Internet account was suspended, Deaton called to complain about his lack of access to the Internet. The call was recorded and the government sought to introduce the tape for the jury to hear. Defense counsel objected to the authenticity and correctness of the tape, that Deaton was induced into giving the statement, and that is was not voluntary. (Trial Tr. 203). The Court overruled the objection (Trial Tr. 204). During cross examination of Hill, defense counsel attempted to point out the inconsistencies between the tape recording and the transcript (Trial Tr. 215-218). Thus, Deaton's assertion regarding counsel's ineffectiveness with regard to the tape recording is without merit.

As previously discussed, the issues concerning the validity and scope of the search warrant are without merit. Therefore, counsel was not ineffective for failing to raise meritless claims. *See Thai v. Mapes*, 412 F. 3d 970, 979 (8th Cir. 2005) (counsel not ineffective for failing to make meritless argument)

Deaton contends that counsel failed to adequately prepare for cross

-9-

examination and impeachment of Whatley. As discussed above, counsel did question Whatley regarding inconsistencies between his testimony in the third trial and his prior testimony. This contention is without merit.

Deaton also argues that his counsel was ineffective for failing to aruge the applicability of *Apprendi v. New Jersey*, 530 U.S. 266 (2000) and *RLC v. United States*, 503 U.S. 291 (1992), or for failing to argue that the Guidelines were unconstitutional. Deaton was sentenced in April, 2002, well before the Supreme Court's ruling in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). Prior to that time, the federal courts had not applied *Apprendi* to invalidate the application of a guidelines scheme. 124 S. Ct. at 2547 n. 1. Deaton cannot establish that his counsel's failure to argue the validity of the Guidelines at the time of sentencing was objectively unreasonable. *See Battle v. Delo*, 19 F. 3d 1547, 1554(8th Cir. 1994) (to succeed in an ineffective assistance claim, defendant must show that counsel's "assistance fell below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances; and second, that the deficient performance prejudiced his defense") Furthermore, given the overwhelming case law rejecting the claim advanced by Deaton, he cannot establish that he was prejudiced by counsel's failure to raise the issue.

Deaton's claim of ineffective assistance of trial counsel is therefore denied.

7. <u>Ineffective Assistance of Appellate Counsel</u>

Deaton contends that his appellate counsel was ineffective for failing to overcome the government's challenges to his brief, and for failing to seek rehearing or a writ of certiorari. As stated above, counsel is not ineffective for failing to raise meritless claims.

Deaton contends that he wanted his appellate counsel to seek rehearing on the

issue of the Eight Circuit's rejection of his claim under light of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), which heald certain portions of the Child Pornography Prevention Act of 1996 unconstitutional. On May 9, 2003, appellate counsel wrote Deaton informing him of the Eight Circuit decision affirming the conviction and stated: "Unless you tell me otherwise, I will plan to file a petition for rehearing within the 14 days allowed."

On My 24, 2003, appellate counsel wrote Deaton the following: "This is to let you know that I decided not to file a Petition for Rehearing in your case. I could not find any support from any Courts of Appeal (or any other courts) for what I wanted to argue on the petition–the finding that the pictures depicted actual children was contrary to Free Speech Coalition's statement that computer-generated images could be indistinguishable from pictures of real children. Please let me know if you want the trial transcripts I have mailed to you, for use in a possible Section 2255 proceeding."

Deaton has submitted an affidavit stating that he tried unsuccessfully on several occasions to contact his appellate counsel. Deaton, however, does not indicate that he instructed his counsel to file a petition for writ of certiorari or that counsel had promised to do so. Therefore, the Court find that Deaton is not entitled to relief on this ground. *cf. Cox v. United States*, 294 F. 3d 959, 960 (8th Cir. 2002)(in light of counsel's failure to file promised petition for certiorari, judgment affirming conviction vacated and new judgment entered to allow timely filing of petition)

8. Sentence Invalid Under United States v. Booker

Deaton contends that the enhancements to his sentence are invalid under the Supreme Court's holding in *United States v. Booker*, 125 S. Ct. 738 (2005). Based on the recent Eighth Circuit ruling in *Never Misses a Shot v. United States*, 413 F. 3d 781 (8th Cir. 2005), Deaton cannot collaterally attack his sentence on the basis of

*Booker. Id.* at 783 ("we conclude the 'new rule' announced in Booker does not apply to criminal convictions that became final before the rule was announced, and thus does not benefit movants in collateral proceedings")

Thus, the Court finds that Deaton is not entitled to relief on this ground.

Accordingly, the motion to vacate, set aside or correct sentence is denied.

IT IS SO ORDERED this 9th day of August, 2005.

*[signature]*
UNITED STATES DISTRICT JUDGE